UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MOLLY CRANE CONSO, | Case No.  21-cv-04480-RMI |
| Plaintiff, | |
| v. | **ORDER RE: MOTIONS TO DISMISS** |
| CITY OF EUREKA, et al., | Re: Dkt. Nos. 20, 21 |
| Defendants. | |

Now pending before the court are two motions to dismiss Plaintiff's First Amended Complaint ("FAC") (dkt. 16); one of which (dkt. 21) has been filed by the City of Eureka ("City") and its police chief, Steve Watson ("Chief Watson"), while the other (dkt. 20) has been filed by the County of Humboldt ("County") and its sheriff, William Honsal ("Sheriff Honsal"). Both motions have been fully briefed and are ripe for decision.[1] As discussed in greater detail below, while Plaintiff has properly pleaded her case against the Doe Defendants by whom she claims she was unjustifiably struck with projectiles during a public protest, her attempts to drag the City, the County, Chief Watson, and Sheriff Honsal into the case and to recast her claims into various other molds are not well founded. In short, rather than pleading concrete factual assertions about things such as training programs, supervision of subordinates, and municipal policies, practices, and customs, Plaintiff simply makes a bevy of conclusory and argumentative assertions that do nothing more than track the elements of the claims she wishes to advance in threadbare fashion and with no factual development. Thus, both motions to dismiss are granted and the City, the

United States District Court
Northern District of California

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

County, Sheriff Honsal, Chief Watson, and the Doe Defendants are herewith dismissed from this lawsuit to the following extent: the case remains active only as to the Doe Defendants with respect to Claim-1 and Claim-2; Claim-3 is dismissed in its entirely; Claim-4 and Claim-7 remain active in their entirety as Defendants have not moved to dismiss those claims; Claim-5 remains active only as to the Doe Defendants; Claim-6 is dismissed in its entirety; and, Claim-8 is dismissed in its entirety. As also set forth below, these dismissals shall be with prejudice.

## BACKGROUND

### *The Original Complaint*

On June 10, 2021, Plaintiff filed her original Complaint (dkt. 1) against the City, the County, Chief Watson, Sheriff Honsal, and twenty unidentified Doe Defendants representing a number of police officers employed by the City and deputies employed by the County. *Id*. at 2. The action arose from alleged interactions between Plaintiff and the Doe Defendants during the course of a protest that took place on May 31, 2020, in (or near) the parking lot of Dutch Bros Coffee at 430 N Street in Eureka, California. *Id*. at 2, 6. Plaintiff's original Complaint alleged that "Plaintiff and other peaceful protestors linked arms with one another and began to walk from the parking lot to the sidewalk when suddenly, and without warning, [the Doe Defendants] forcefully and unjustifiably grabbed Plaintiff's arm and began to shove her . . . [and] shot Plaintiff with a chemical munition called 'pepper balls' and / or other such projectiles such as 'rubber bullets' . . . in the head, buttocks, and breasts." *Id*. at 6. Plaintiff also alleged that she had not violated any laws; that she had not caused any harm or posed the threat of harm to any of the Doe Defendants on the scene; that the Doe Defendants had given no verbal warning or command of any sort before shooting her with the aforementioned non-lethal projectiles; that the Doe Defendants had not issued any order to disperse; and, as a result of the force used against her, that Plaintiff "suffered numerous physical injuries including but not limited to, injuries to her head, hearing impairment, bruising, concussion and post-concussive syndrome, and chemical burns [in addition to the fact that she] continues to suffer from [] emotional distress as a result of the incident. *Id*. at 6-7. Plaintiff clarified that Doe Defendants 1 through 10 are Eureka police officers, and Doe Defendants 10 through 20 are Sheriff's deputies – all of whom have been sued in their individual

United States District Court
Northern District of California

and official capacities. *Id*. at 4, 5.

The City, the County, Chief Watson, and Sheriff Honsal have all been sued because they allegedly "failed to impose adequate discipline on [their] officers [and deputies] who committed different types of excessive force, creating a culture of impunity within the Eureka Police Department that encourages such violence and incidents of unreasonable force against the public." *Id*. at 2. Like the Doe Defendants, Chief Watson and Sheriff Honsal have also been "sued individually and/or in his/her official capacity as deputies, officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives" of the City and County. *Id*. at 5. Plaintiff's link between the alleged wrongdoing of the Doe Defendants and their supervisors, is embodied in the simple assertion that Chief Watson and Sheriff Honsal "were in charge of, in control of and coordinating a department-wide response to the peaceful protests on May 31, 2020[,] [a]s such, [they] were aware that their deputies were engaging in excessive force against citizens peacefully protesting, including Plaintiff, and failed to prevent their subordinates from engaging in such conduct." *Id*. at 7-8, 9, 11. Plaintiff also alleged that findings by the City and County to the effect "that the use of force in this case was justified, lawful, and proper is demonstrative of the inadequate investigations and the failure to take appropriate corrective action that plagues the Eureka Police Department and the Humboldt County Sheriff's Department and causes a pattern, policy, and practice of tolerating and encouraging the use of excessive force." *Id*. at 11. More specifically, as to the City and County, the original Complaint listed eight items that Plaintiff suggests are unlawful policies, practices, and practices: (a) the City and County either knew or should have known that they hired and retained officers and deputies that "had dangerous propensities for abusing their authority by using excessive force, and for mistreating citizens by failing to follow written [] policies, including [policies about] the use of excessive force"; (b) inadequately supervising, training, controlling, assigning and disciplining officers and deputies who the City and County knew or should have known "had the aforementioned propensities and character traits including the propensity for violence and the excessive use of force"; (c) by maintaining "grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct" by

the Doe Defendants; (d) by failing to adequately train officers and employees, and failing to institute appropriate policies regarding lawful procedures and practices for the use of force; (e) by failing to discipline the Doe Defendants for their unlawful use of force; (f) by ratifying the intentional misconduct of the Doe Defendants who "commit unlawful detentions and the use of force"; (g) by failing to properly investigate claims of unlawful detention and the use of force by the Doe Defendants; and, (h) "[b]y having and maintaining an unconstitutional custom and practice of using excessive force, so as to shock the conscience, which is also demonstrated by inadequate training . . . with a deliberate indifference to individuals' safety and rights." *Id*. at 11-13.

Plaintiff then adds that the County and City "have a longstanding custom or practice of using excessive force when an individual does not pose and imminent threat of harm during a pursuit." *Id*. at 13. In support of this assertion, Plaintiff cites three cases – the first involved a 1997 protest during which police officers reportedly "swabbed pepper spray in the eyes of eight activists practicing nonviolent resistance" which was later reportedly found to constitute excessive force; the second involved an allegation of excessive force in a wrongful death action where a man died in the custody of Eureka police officers but that was settled prior to trial; and, the third involved the reported denial of qualified immunity for the sheriff and chief deputy sheriff in a matter that involved the "repeated use of [pepper] spray and full-blast sprays, and [that the] refusal to wash out the protestors' eyes with water to alleviate [the] harmful effects of [the] spray" constituted excessive force which had been specifically authorized by the sheriff and his chief deputy. *Id*. at 13-14.

On this factual foundation, Plaintiff's original Complaint pleaded eight claims: (1) unreasonable search and seizure – excessive force – pursuant to 42 U.S.C. § 1983 against Chief Watson, Sheriff Honsal, and Does 1 through 20; (2) violation of the First Amendment, pursuant to § 1983, against the individual Defendants (that is, the Chief, the Sheriff, and the Doe Defendants); (3) municipal liability for unconstitutional customs or policies against all Defendants; (4, 5) state law claims for negligence, as well as assault and battery, pursuant to California common law and Cal. Gov. Code § 820, against all Defendants; and, (6) a state law claim for negligent hiring,

United States District Court
Northern District of California

1  supervision, and retention, pursuant to California common law and Cal. Gov. Code § 820, against

2  the City, County, Chief Watson, and Sheriff Honsal; (7) a violation of the Bane Act, pursuant to

3  Cal. Civ. Code § 52.1, against all Defendants; and, (8 & 9) state law claims for the intentional and

4  negligent infliction of emotional distress against all Defendants. *Id*. at 7-22.

5  *The First Amended Complaint ("FAC")*

6        As set forth below – in many respects – the FAC suffers from the same defects as the

7  Original Complaint in that it is short on concrete factual allegations and is instead dominated by

8  legal argument, conclusory statements cast as factual allegations, and rote repetition of elements of

9  claims coupled with certain musings that can only be described as conjecture and speculation. On

10  July 27, 2021, several weeks after Plaintiff filed her Original Complaint, a motion to dismiss was

11  filed by the City and Chief Watson that pointed out these defects. *See* City's Mot. (dkt. 12) at 10.

12  Rather than filing a response to the Motion, Plaintiff filed the FAC (dkt. 15) on August 9, 2021,

13  pursuant to Fed. R. Civ. P. 15(a)(1)(B) (permitting amendment as a matter of course within 21

14  days after services of a motion under Rule 12(b)). Plaintiff's FAC dropped 1 claim (negligent

15  infliction of emotional distress) while retaining the other eight claims and maintaining them

16  against the same defendants. *See generally* FAC (dkt. 16) at 1, 4-6, 11-27. With the exception of a

17  few newly-added factual allegations enumerated below (many of which are of little to no

18  relevance, while others are conclusory statements cast in the form of factual allegations), the

19  above-recited basis for Plaintiff's claims has been largely repeated in the FAC. *Compare* Compl.

20  (dkt. 1) *with* FAC (dkt. 16).

21        On November 9, 2020, Plaintiff submitted claims for her damages to the City and County

22  and, a few weeks later, both entities denied her claim and denied any alleged wrongdoing. *Id*. at 6.

23  During the course of nationwide protests that were prompted by the murder of George Floyd at the

24  hands of Minneapolis police officer Derek Chauvin, Plaintiff and others gathered for a protest in

25  the City of Eureka on May 30, 2020. *Id*. at 7. Appearing to state that some protesters (perhaps

26  including Plaintiff) may have been blocking roadways, Plaintiff contends that "[t]hroughout the

27  day [she] witnessed several motorists hit or attempt to hit protestors with their vehicles . . . [and]

28  [t]hat evening Plaintiff witnessed a motorist, who she had seen earlier in the day, intentionally

drive toward and hit a fellow protestor before then attempting to do the same to her." *Id*. The following morning, Plaintiff contends that she emailed Chief Watson to complain about those motorists, but that – despite allegedly receiving assurances that an officer would contact her to discuss her concerns – no one ever followed up with her. *Id*.

That day, Chief Watson reportedly issued a number of public statements to the following effect: that he praised his officers' restraint in light of the fact that some protesters were "militant"; that some of the motorists were frightened by the actions of the protesters, some of whom were "angry and chanting"; that he did not believe the motorists were intentionally attempting to run over protesters but that it was possible that "on a couple of occasions" drivers may have "kind of bowled their way" through pedestrians; that while he would have liked to march alongside protesters, he refrained from doing so due to his perception that there were militant anarchists among the protesters; and, that ahead of the protests that evening, he was seeing to it that extra officers would be working. *Id*. at 7-8.

The following day – Sunday, May 31, 2020 – Plaintiff alleges that Chief Watson and Sheriff Honsal "were captured on video at the protest chanting '[n]o justice no peace' along with protestors," at which time "Plaintiff identified herself to [] Chief Watson as the young woman who emailed him about the alarming behavior of [certain] motorists at the previous day's demonstration," to which Chief Watson reportedly responded "[o]h, you're the person who emailed me." *Id*. at 8. Without any concrete details or specifics, Plaintiff has added the following statement to the FAC: that "based on information and belief" Sheriff Honsal and Chief Watson "directed and ordered the use of violent tactics and riot control without regard for safety and constitutional rights of those peacefully protesting." *Id*. at 9, 10. Plaintiff adds that "[t]hese tactics include[d] the widespread and indiscriminate use of less-than lethal munitions and projectiles without warning and in methods designed to maximize the likelihood of serious injury (i.e., pointing at the protestors (sic) heads and other sensitive body parts)." *Id*. at 10. Then, in conclusory fashion, Plaintiff also asserts that "Defendant Doe Officers, and Chief Watson, and Sheriff Honsal retaliated against Plaintiff for engaging in constitutionally protected activity for the content and viewpoint of their (sic) expressions [and] [t]his retaliation was conducted in an effort

6

1    to chill Plaintiff's free speech." *Id*. The factual allegations portion of Plaintiff's FAC then

2    concludes by noting two things: (1) that Chief Watson was captured on video speaking to a group

3    of "remaining protesters" and reportedly telling them "I don't want you guys to get hit, that's all. I

4    know most people here are good people"; and, (2) that "[f]ollowing the violent assault upon

5    Plaintiff by Doe Officers, Defendant Chief Watson [reportedly] told Plaintiff [that] '[s]omeone

6    must have shot the ground and it bounced,' [while later reportedly conceding] that not *all* of the

7    projectiles were fired into the ground but [that he reportedly] viewed their use as successful and

8    justified." *Id*. at 10-11.

9           The FAC's first claim is for excessive force against Chief Watson, Sheriff Honsal, and the

10   20 unidentified Doe Defendants – each of which are sued in their individual capacities. *See id*. at

11   11-13. As to Chief Watson and Sheriff Honsal, the FAC states that "[u]pon information and

12   belief," the Chief and Sheriff were "in charge of, in control of and coordinating a department-wide

13   response" to the protests, and because both men were reportedly present in the general area when

14   their subordinates allegedly used excessive force, they therefore "failed to prevent their

15   subordinates from engaging in such conduct." *Id*. at 11. The FAC then ventures to speculate that

16   Chief Watson and Sheriff Honsal "directed [their] officers to use, and/or knew they would use, or

17   should have known they would use, excessive force against persons such as Plaintiff." *Id*. at 11-

18   12. The remainder of the statements in this section of the FAC – that is, those directed at Chief

19   Watson and Sheriff Honsal – are not allegations of fact; instead, they are either conclusory

20   statements (e.g., "Sheriff Honsal engaged in conduct that showed a reckless or callous indifference

21   to the deprivation by Doe Officers of the rights of others such as Plaintiff.") or they are speculative

22   or conjectural statements (e.g., because Chief Watson and Sheriff Honsal were supposed to be in

23   charge and because they were supposedly at or near the location(s) where Plaintiff was protesting,

24   they knew or should have known that certain unnamed officers allegedly shot Plaintiff with

25   pepper-spray balls without justification). *See id*. at 11-13.

26          Plaintiff's second claim – alleging a violation of her First Amendment rights (speech,

27   assembly, and association) – is directed against Chief Watson, Sheriff Honsal, and the 20

28   unnamed Doe Defendants – all of whom are sued in their individual capacity. *Id*. at 13-15. At least

United States District Court
Northern District of California

1    as to Chief Watson and Sheriff Honsal, this claim also rests on the above-recited foundation of

2    conclusory and speculative statements rather than concrete allegations of fact. Plaintiff simply

3    makes a series of conclusory and argumentative statements by contending (without factual

4    allegations to support such statements) that "Defendant[s] Doe Officers, [] Chief Watson[,] and

5    Sheriff Honsal retaliated against Plaintiff for engaging in constitutionally protected activity and for

6    the content and viewpoint of their (sic) expressions[,] [and] [t]his retaliation was conducted in an

7    effort to chill Plaintiff's free speech." *Id*. at 14.

8         Plaintiff's third claim is a municipal liability claim brought pursuant to § 1983 and *Monell*

9    *v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (providing plaintiffs a method to sue

10   municipalities for policies, practices, or customs that caused specified types of constitutionally

11   cognizable harm to one or more individuals). *See* FAC (dkt. 16) at 15. In this regard, Plaintiff

12   contends that the City and County essentially "ratified" the excessive force allegedly used by the

13   unidentified Doe Defendants by failing to "impose adequate discipline" on those unidentified

14   officers and/or deputies – thereby "creating a culture of impunity" within the City's Police

15   Department and the County's Sheriff's Department. *Id*. at 15-16. The FAC then argues that the

16   City and County's "findings that the use of force here was justified, lawful, and proper is

17   demonstrative of the inadequate investigations and the failure to take appropriate corrective action

18   that plagues the Eureka Police Department and the Humboldt County Sheriff's Department and

19   *causes* a pattern, policy, and practice of tolerating and encouraging the use of excessive force." *Id*.

20   at 16 (emphasis added).

21        The FAC then reiterates a series of repetitive conclusory assertions that are asserted to be

22   demonstrative of the notion that the City and County "knowingly maintained, enforced and

23   applied" the following customs, policies, and practices: (1) employing and retaining personnel that

24   had dangerous propensities for abusing their authority by using excessive force and mistreating

25   citizens by failing to follow written policies; (2) inadequately supervising, training, controlling,

26   assigning, and disciplining personnel that the City and County knew or should have known had

27   the aforementioned propensities; (3) "maintaining grossly inadequate procedures for reporting,

28   supervising, investigating, reviewing, disciplining and controlling the intentional misconduct"

United States District Court
Northern District of California

8

allegedly perpetrated by the Doe Defendants who are employed by the City and / or the County; (4) failing to adequately train personnel and institute appropriate policies regarding the use of force; (5) failing to discipline their personnel for unlawful use of force; (6) ratifying the intentional misconduct of their employees; (7) failing to properly investigate claims of unlawful detention and excessive force; and, (8) "having and maintaining an unconstitutional custom and practice of using excessive force, so as to shock the conscience, which is also demonstrated by inadequate training." *Id*. at 16-18.

The FAC then repeats – in similarly conclusory fashion – that the City and County have policies, practices, and customs of: (1) "violating the freedom of expression of protestors and of using excessive force"; (2) inadequately training its personnel regarding their "aiming potentially deadly devices and weapons and protestors['] heads and face[s]"; (3) deploying chemical agents and projectiles against protestors without warning or justification; and, (4) using excessive force when an individual does not pose an imminent threat of harm during pursuit." *Id*. at 18. The FAC then ventures to provide examples of the aforementioned policies, practices and customs by referring to what appears to be four anecdotes, but is in fact three anecdotes. The first anecdote (with a case name but no citation) involves an incident from approximately 24 years ago when "police officers swabbed pepper spray in the eyes of eight activists practicing nonviolent resistance" which was reportedly later found by a court in this district to constitute excessive force. *Id*. at 19. The second involves an incident from approximately 15 years ago and resulted in a jury verdict against the City based on a prisoner's in-custody death due to having been beaten by Eureka police officers. *Id*. The third involves a settlement stemming from an alleged beating of a journalist by Sheriff's Deputies while reportedly filming an environmental protest. *Id*. Lastly, while Plaintiff fails to mention it, the fourth anecdote actually involves the same case as the first anecdote. In 1997, officers used pepper spray on nonviolent protestors, to force them to release themselves from metal lock-down devices with which they had linked themselves to each other, by applying the irritant directly to their eyes, by refusing them water to wash out their eyes unless they released themselves, and by authorizing full blasts of the irritant from point-blank range into their eyes, despite the manufacturer's warning against spraying people from less than three feet

United States District Court
Northern District of California

1  away – this set of events was found to constitute objectively unreasonable force because, under the

2  circumstances, the irritant was unneeded to subdue, arrest, or safely and quickly remove those

3  protestors without pain or injury. *See id*. at ¶¶ (a) and (d); *see also Headwaters Forest Def. v.*

4  *Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) ("Defendants' repeated use of pepper

5  spray was also clearly unreasonable . . . the use of pepper spray 'may be reasonable as a general

6  policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is

7  rendered helpless, any reasonable officer would know that a continued use of the weapon or a

8  refusal without cause to alleviate its harmful effects constitutes excessive force' . . . [b]ecause the

9  officers [already] had control over the protestors . . . it was unnecessary to use pepper spray to

10  bring them under control, and even less necessary to repeatedly use pepper spray against the

11  protestors when they refused to release" from the lockdown devices with which they had linked

12  themselves to each other). After some further repetition (*see* FAC (dkt. 16) at 20-21), the FAC

13  declares that the City, the County, the Sheriff, and the Police Chief are liable to Plaintiff for

14  compensatory and punitive damages. *Id*. at 20-21.

15         Plaintiff's remaining claims are brought under state law. *See id*. at 21-27. The fourth claim

16  is for assault and battery against Doe Defendants 1-10 (Eureka police officers), Doe Defendants

17  10-20 (Humboldt County sheriff's deputies), and against the City and County under a vicarious

18  liability theory pursuant to Cal. Gov. Code § 815.2(a). *Id*. at 21-22. The fifth claim is for

19  negligence against the City, the County, and Does 1-20 for their alleged failures in various regards

20  ranging from the Doe Defendants' shooting Plaintiff with the riot-control projectiles mentioned

21  above, to the hiring, training, supervision, and retention of the Doe Defendants by the City and

22  County. *Id*. at 22-23. The sixth claim – again – asserts negligent hiring, supervision, and retention

23  against the City and County. *Id*. at 24-25. The seventh claim alleges violations of the Bane Act

24  (Cal. Civ. Code § 52.1) against Doe Defendants 1-20, the City, and the County. *Id*. at 25-26.

25  Lastly, the eighth claim charges intentional infliction of emotional distress against the Doe

26  Defendants, the City, and the County. *Id*. at 26-27.

27  //

28  //

**LEGAL STANDARDS**

The currently-pending motions to dismiss (dkts. 20, 21), filed under Fed. R. Civ. P. 12(b)(6), challenge the sufficiency of the allegations set forth in the FAC. In reviewing the sufficiency of a complaint, before the presentation of any evidence either by affidavit or admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail, instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Thus, dismissal is proper when an operative complaint either suffers from the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In evaluating such motions, courts must: (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and therefore courts must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Following a dismissal in these regards, courts need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

To survive dismissal under these standards, while complaints do not necessarily need to be hyper-detailed, they do need to provide the grounds of a plaintiff's entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Pursuant to these standards, courts follow a "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, threadbare recitals of the elements of a cause of action, and conclusory statements; and, (2) only a complaint that states a plausible claim for relief survives a motion to dismiss, and plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense – however, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint may have alleged — but it has failed to "show" – "that the pleader is entitled to relief" as required by Fed. Rule Civ. Proc. 8(a)(2). *See generally Iqbal*, 556 U.S. at 678-79.

In light of these principles, a court considering a motion to dismiss can choose to begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they *must* be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact contain well-pleaded and factual allegations, courts will assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*.

## DISCUSSION

Defendants have moved to dismiss a number of Plaintiff's claims (Claim Nos. 1-3, 5-6, & 8) as to various combinations of the Defendants. *See generally* County Defs' Mot. (dkt. 20); and City Defs' Mot. (dkt. 21). Plaintiff has filed individual briefs opposing each motion. *See* Pl.'s Opp. (dkts. 26, 27). The court will address the Parties' arguments on a claim-by-claim basis.

### *Claim-1: Unreasonable Search and Seizure – Excessive Force*

The FAC directs Claim-1 at Sheriff Honsal, Chief Watson, and Does 1-20. Defendants move to dismiss this claim as to Chief Watson and Sheriff Honsal on grounds that the FAC does not properly allege that they either caused or participated in any constitutional deprivation in this regard. *See* County Defs.' Mot. (dkt. 20) at 12-17; City Defs.' Mot. (21) at 12-16. The FAC states

United States District Court
Northern District of California

– in conclusory fashion – that Chief Watson and Sheriff Honsal "were aware" that the Doe

Defendants "were using excessive and unreasonable force against citizens peacefully protesting . .

. and failed to prevent their subordinates from engaging in such conduct." *See* FAC (dkt. 16) at 11.

The FAC then adds that Chief Watson and Sheriff Honsal directed their officers and deputies "to

use, and/or knew they would use, or should have known they would use, excessive force against

persons such as Plaintiff." *Id.* at 11-12. In response to the motions to dismiss, Plaintiff appears to

rely – without expressly saying so – on the notion that the Chief and Sheriff were authority figures

and policy makers, and therefore, they should be vicariously responsible for the acts and

omissions of the Doe Defendants simply because they were "ultimately responsible for all

policies, procedures or omission of procedures, supervision, and training" of the Doe Defendants.

*See* Pl.'s Opp. (dkt. 26) at 13-16, and (dkt. 27) at 12-15.

Plaintiff has sued Chief Watson, Sheriff Honsal, and Does 1 through 20, in both their

individual capacities and their official capacities. *See* FAC (dkt. 16) at 5. Section 1983 provides

for a cause of action against any "person" who, acting under the color of law, subjects another to

"the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42

U.S.C. § 1983. Such claims against government officials in their official capacities "are really

suits against the governmental employer because the employer must pay any damages awarded."

*Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002); *see also Hafer v. Melo*, 502 U.S. 21, 25

(1991). Under *Monell v. Department of Social Services*, § 1983 plaintiffs cannot state a claim for

municipal liability based on a *respondeat superior* theory. 436 U.S. 658, 691 (1978). However, a

municipal government entity may be held liable under § 1983 "when execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury." *Id.* at 694. Accordingly, because official

capacity suits against government officials are, in reality, suits against the governmental employer

(*see Kentucky v. Graham*, 473 U.S. 159, 166 (1985)), the court will address the official capacity

claims together with Plaintiff's *Monell* claim against the City and the County (*infra*).

Turning to Plaintiff's individual capacity claims against Chief Watson, Sheriff Honsal, and

Does 1 through 20. Initially, the court will note that because Defendants' motions to dismiss (dkts.

20, 21) only seek dismissal of Claim-1 on behalf of Sheriff Honsal, the County, Chief Watson, and the City – none of the individual capacity holdings expressed herein apply to any of the Doe Defendants. As stated above, in order to state a claim under Section 1983, a plaintiff must plead that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's rights under federal law (*see West v. Atkins*, 487 U.S. 42, 48 (1988); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)), and there is no vicarious liability under Section 1983. *See Iqbal*, 556 U.S. at 676. Therefore, to state a viable § 1983 claim against an individual-capacity defendant, a plaintiff must allege that the defendant, "through the official's own individual actions," caused the particular constitutional deprivation alleged. *Id*. In this context, an individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [the individual] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [individual] knows or reasonably should know would cause others to inflict the constitutional injury." *See Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Since vicarious liability is inapplicable in Section 1983 suits, supervisors such as Chief Watson and Sheriff Honsal may be held liable only when their own misconduct caused a constitutional deprivation. *Iqbal*, 556 U.S. at 676; *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). Thus, in most situations, a government official may be held liable as a supervisor under Section 1983 if (1) the supervisor personally participated in or directed a subordinate's constitutional violation; or (2) the supervisor's independent wrongful conduct proximately caused the violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Under the second approach, even absent "overt personal participation," a supervisor may still be liable under § 1983 by promulgating, implementing, or being otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his or her subordinates) which

1    proximately caused the plaintiff's constitutional injury. *OSU Student Alliance*, 699 F.3d at 1076;

2    *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) ("[S]upervisory liability exists

3    even without overt personal participation in the offensive act if supervisory officials implement a

4    policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the

5    moving force of a constitutional violation.'") (citations and internal quotation marks omitted).

6        Here, even after amending her original pleading in an effort to address this deficiency,

7    Plaintiff has not alleged facts that could satisfy these standards. In this regard, Plaintiff has only

8    pleaded that Chief Watson and Sheriff Honsal "were both present" during the protests of May 31,

9    2020, and that they "were aware that their deputies were using excessive and unreasonable force

10   against citizens peacefully protesting, including Plaintiff, and failed to prevent their subordinates

11   from engaging in such conducts," and that they directed their officers and deputies to use, and / or

12   they knew that their subordinates would use, or that they should have known that their

13   subordinates would use excessive force against persons such as Plaintiff. *See* FAC (dkt. 16) at 11-

14   12. Additionally, the FAC sets forth a rote recitation of the elements of a supervisory liability

15   claim in conclusory and threadbare fashion but with no factual development by asserting that the

16   Chief and Sheriff set in motion a series of acts by their subordinates that they knew or should have

17   known would result in constitutional violations, and that the Chief and Sheriff "engaged in

18   conduct that showed a reckless or callous indifference to the deprivation by [the] Doe

19   [Defendants] of the rights of others such as Plaintiff." *Id.* 11-12. As stated above, courts follow a

20   two-prong approach in addressing a motion to dismiss. The FAC fails to survive the first prong of

21   this standard in Claim-1 as it relates to the Chief and the Sheriff because the court is not required

22   to accept as true allegations – such as are involved here – which are little more than legal

23   conclusions cast in the mold of factual allegations, and which are threadbare recitals of the

24   elements of a cause of action with no factual development. *See generally Iqbal*, 556 U.S. at 678-

25   79. In short, Plaintiff has not properly alleged that Chief Watson or Sheriff Honsal were

26   responsible for any act or omission that caused her to suffer a constitutional deprivation (*see id*.

27   676), or that they personally participated in or directed any subordinate's constitutional violation;

28   or that any independent wrongful conduct on either of their parts proximately caused the violation

United States District Court
Northern District of California

15

(*Starr*, 652 F.3d at 1207), or that they promulgated, implemented, or were otherwise responsible for any policy, practice, or custom that required their subordinates to commit the constitutional violations in question (*OSU Student Alliance*, 699 F.3d at 1076). Accordingly, as to Claim-1, because Plaintiff has failed to "show" the entitlement to relief contemplated in Fed. Rule Civ. Proc. 8(a)(2), Defendants' motions are **GRANTED** as to Chief Watson and Sheriff Honsal. Further, because Plaintiff has already had an opportunity to amend, and because even after amendment Plaintiff has only pleaded conclusory and threadbare recitations of the elements of supervisor liability with no factual development at all, it is clear to the court that further leave to amend would be futile. For that reason, Claim-1 is **DISMISSED with prejudice** as to Chief Watson and Sheriff Honsal.

*Claim-2: Violation of First Amendment*

Claim-2 asserts – in a similarly conclusory fashion – that Chief Watson, Sheriff Honsal, and the Doe Defendants "retaliated against Plaintiff for engaging in constitutionally protected activity and for the content and viewpoint of their (sic) expressions." *See* FAC (dkt. 16) at 14-15. Defendants submit that Claim-2 fails to state a cause of action against Chief Watson (dkt. 21 at 17-18) and Sheriff Honsal (dkt. 20 at 17-19). Chief Watson and Sheriff Honsal move to dismiss this claim because the FAC does not plead facts showing that either of them took any action against Plaintiff, or even against the group of protestors as a whole, that was motivated by constitutionally protected speech, or that they had any desire to silence or retaliate against Plaintiff for engaging in any such protected activity (*see* dkt. 20 at 18-19; and, dkt. 21 at 17-18).

Official reprisal for protected speech runs afoul of the Constitution because it inhibits, or threatens to inhibit, the exercise of a protected right, "and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588, n. 10 (1998)); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (the government may not punish a person or deprive that person of a benefit on the basis of constitutionally protected speech). Thus, a plaintiff may bring a § 1983 claim alleging that public officials took action with the intent to retaliate against, obstruct, or chill

the plaintiff's First Amendment rights. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016); *see also Reno v. Nielson*, 424 F. Supp. 3d 1045, 1057 (D. Haw. 2019) ("A typical example of a police officer chilling First Amendment activities is a retaliatory arrest case . . . Courts have also found chilling in a retaliation context . . . where an officer detained the plaintiff, 'us[ed] excessive force in placing him in handcuffs, and prolong[ed] the detention when there was no legitimate reason to do so.'") (quoting *Crump v. Bay Area Rapid Transit Dist.*, No. 17-CV-02259-JCS, 2018 WL 4927114, at *14 (N.D. Cal. Oct. 10, 2018)).

In order to prevail on her First Amendment retaliation claim, Plaintiff must show: (1) that she was engaged in a constitutionally protected activity, (2) that the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) that the protected activity was a substantial or motivating factor in the defendant's conduct (showing a nexus between the defendants' actions and an intent to chill speech). *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019); *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019); *Ariz. Students' Ass'n*, 824 F.3d at 867; *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (identifying "[i]ntent to inhibit speech" as an element of the claim).

Thus, to survive dismissal, Plaintiff "must establish a causal connection between" the "retaliatory animus" attributed to Chief Watson and Sheriff Honsal and Plaintiff's subsequent injury. *See Capp*, 940 F.3d at 1053; *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'") (quoting *Hartman*, 547 U.S. at 259). Put another way, Plaintiff must show that "the retaliatory animus was 'a but-for cause, meaning that the adverse action against [her] would not have been taken absent the retaliatory motive.'" *Capp*, 940 F.3d at 1053 (quoting *Nieves*, 139 S.Ct. at 1722).

Here, once the conclusory and argumentative content is put aside, Plaintiff has alleged nothing more than to assert that the Chief and Sheriff were present in the general area when the Doe Defendants fired the projectiles in question and that the Chief and Sheriff "failed to prevent their subordinates from engaging in such conduct." *See FAC (dkt. 16) at 13-15*. Accordingly, Plaintiff has only pleaded that she was engaged in constitutionally protected activity – attending a

public protest. She has not properly alleged that the Chief of Sheriff harbored any retaliatory animus, let alone alleging that there was any causal nexus between that non-existent animus and her injury. Furthermore, given that Plaintiff has already had an opportunity to amend, it is clear that a further opportunity to amend would be futile in this regard. Accordingly, Defendants motions are **GRANTED** in this regard and Claim-2 is **DISMISSED with prejudice** as to Chief Watson and Sheriff Honsal.

*Claim-3: Municipal Liability for Unconstitutional Custom or Policy*

Claim-3 asserts a municipal liability claim against the County, the City, Sheriff Honsal, Chief Watson, and the Doe Defendants. *See* FAC (dkt. 16) 15-21. Claim-3 asserts that the Doe Defendants' use of force was ratified by the City and County; that the Doe Defendants were not disciplined or reprimanded for their conduct; that the Chief and Sheriff have created "a culture of impunity . . . that encourages such violence and incidents of unreasonable force against the public"; and, that "Defendants' findings that the use of force here was justified, lawful, and proper is demonstrative of the inadequate investigations and the failure to take appropriate corrective action that plagues the Eureka Police Department and the Humboldt County Sheriff's Department and causes a pattern, policy, and practice of tolerating and encouraging the use of excessive force." *Id*. at 15-16. Then, as described above, in conclusory fashion, Plaintiff attributes eight purportedly unconstitutional policies, customs, and practices to the City and County concerning their employment of officers with a propensity for unjustified violence, the failure to train and supervise their officers, the custom of deploying chemical agents and projectiles without warning, the "longstanding custom or practice of using excessive force," the "policies and customs of violating the freedom of expression of protestors," and so on. *See id*. at 16-18. The only basis provided in the FAC for these supposed policies, customs, and practices, are the identification of four anecdotes – which turned out to actually be three anecdotes because, as described above, the FAC listed the *Lundberg* and *Headwaters Forest Defense* cases separately when they arose from the same set of events. *Id*. In essence, Plaintiff listed two excessive force cases (one of which settled prior to trial) from 2005 and 2007, coupled with an anecdote about another settlement with a journalist who was reportedly beaten by deputies in 2019 during a protest. *Id*. 19-20.

1     Defendants respond by pointing out that official capacity suits against the individual

2 Defendants are, in reality, claims against the County and the City respectively. *See* County Defs.

3 Mot. (dkt. 20) at 19-20; *see also* City Defs.' Mot. (dkt. 21) at 18-19. As to municipal liability

4 claims against the Sheriff and the Chief in their individual capacities – Defendants argue that such

5 claims are unsupported by the allegations in the FAC because of the conclusory and threadbare

6 nature of the allegations relied upon by the FAC in attempting to draw a nexus between the

7 Sheriff's and Chief's conduct and the alleged constitutional violations (*see* dkt. 20 at 20; dkt. 21 at

8 19). Defendants then add that the FAC also fails to state a municipal liability claim against the

9 City or the County because: (1) Plaintiff's *Monell* claim improperly lumped together combined

10 allegations against the City and County while failing to distinguish their respective policies,

11 practices, and/or customs; (2) that Plaintiff's *Monell* claim improperly rests on a foundation of

12 vague and conclusory assertions in that there are no concrete factual allegations showing any

13 actual patterns, practices, or customs; and, (3) "Plaintiff's reliance on three incidents that allegedly

14 occurred during the span of more than twelve years is insufficient to establish a pattern, practice or

15 custom within the meaning of *Monell*." *See* County Defs.' Mot. (dkt. 20) at 22-28; *see also* City

16 Defs.' Mot. (dkt. 21) at 18-25. Defendants add that – in addition to failing to allege non-

17 conclusory facts that could identify any relevant policy, custom, or practice – the FAC also fails to

18 allege any non-conclusory factual allegations that could support a ratification theory, or an

19 inadequate training theory (*see* dkt. 20; at 25-28; dkt. 21 at 23-25).

20     Without repeating the wealth of the FAC's conclusory assertions in this regard, the court

21 will note that – when stripped of its conclusory and argumentative content – the FAC essentially

22 boils down to resting its *Monell* claim on the assertion of three anecdotes: two prior excessive

23 force cases (one against the City and one against the County), one from 2005 and another from

24 2007, as well as one reportedly excessive force claim against the County from 2019 which settled

25 out of court. *See* FAC (dkt. 16) at 19-20. This is insufficient as a matter of law. *See e.g., Okla. City

26 v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is

27 not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it

28 was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

United States District Court
Northern District of California

municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."). Thus, it is well established that merely alleging a few random acts or isolated incidents of unconstitutional action by non-policymaking employees or officers are insufficient to establish the existence of a municipal policy, practice, or custom within the meaning of *Monell*. *See e.g., McDade v West*, 223 F.3d 1135, 1142 (9th Cir 2000); *Trevino v Gates*, 99 F.3d 911, 918 (9th Cir 1996); *Thompson v City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir 1989). "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920. "Only if a plaintiff shows that his [or her] injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *See Thompson*, 885 F.2d at 1444 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("Relying on the language of § 1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.")). For these reasons, once the FAC is stripped of its conclusory and argumentative content, Plaintiff has failed to allege enough facts that would show the existence of a policy, practice, or custom that caused her injuries.

As to Plaintiff's ratification theory – ratification under *Monell* requires a conscious, affirmative choice by a policymaker. *See Garza v. City of L.A.*, No. 19-55952, 2021 U.S. App. LEXIS 22090, at *5 (9th Cir. July 26, 2021) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)). This requirement for a "conscious, affirmative choice" is not satisfied by a failure to overrule a subordinate's already-completed act. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, a plaintiff must prove that the policymaker approved of the subordinate's act. For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's

20

1   completed act does not constitute approval."); *see also Weisbuch v. County of Los Angeles*, 119

2   F.3d 778, 781 (9th Cir. 1997) ("To hold cities liable under section 1983 whenever policymakers

3   fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle

4   *respondeat superior* liability into section 1983."). Thus, the mere failure to discipline does not

5   amount to ratification of the allegedly unconstitutional actions committed by the Doe Defendants.

6   *See e.g., Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253-54 (9th Cir. 2010); *see also*

7   *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) (refusing to hold that the "failure of a police

8   department to discipline in a specific instance is an adequate basis for municipal liability under

9   *Monell*."). Accordingly, Plaintiff has failed to plead enough facts to support a ratification theory in

10   support of her *Monell* claim.

11          As to Plaintiff's inadequate training theory – "[i]n limited circumstances, a local

12   government's decision not to train certain employees about their legal duty to avoid violating

13   citizens' rights may rise to the level of an official government policy for purposes of § 1983 [and]

14   . . . [a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim

15   turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Tuttle*, 471 U.S.

16   at 822-823 (1985) ("[A] 'policy' of 'inadequate training' is 'far more nebulous, and a good deal

17   further removed from the constitutional violation, than was the policy in *Monell*."). The Supreme

18   Court has repeatedly explained that in order to satisfy this standard, a municipality's failure to

19   train its employees in a relevant respect must amount to "deliberate indifference to the rights of

20   persons with whom the [untrained employees] come into contact," and "[o]nly then can such a

21   shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."

22   *Connick*, 563 U.S. at 61-62 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

23   In this context, deliberate indifference is a stringent standard of fault that requires proof (and for

24   present purposes, concrete factual allegations) that a municipal actor disregarded a known or

25   obvious consequence of his or her action – thus, "when city policymakers are on actual or

26   constructive notice that a particular omission in their training program causes city employees to

27   violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the

28   policymakers choose to retain that training program. *Connick*, 563 U.S. at 62. A municipal "policy

United States District Court
Northern District of California

21

of inaction," in light of notice that this will cause constitutional violations, "is the functional equivalent of a decision by the city itself to violate the Constitution." *Id*. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Id*. "*Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *Harris*, 489 U.S. at 389. That is precisely what Plaintiff has done here. Plaintiff has merely alleged that the existing training program for the City's police officers and the County's deputies *must have been* inadequate because Plaintiff was reportedly undeservedly shot by projectiles during a public protest while Plaintiff was reportedly behaving in a lawful and non-violent manner. This is insufficient to make out a theory for deliberate indifference underlying a failure to train approach to a *Monell* claim. The FAC lacks any allegations, specific or otherwise, about the training programs of either the City or the County – let alone concrete assertions about what might be the relevant *shortcomings* in those training programs that might have caused or contributed to Plaintiff's alleged injuries.

Therefore, for the above-stated reasons, the court finds that Plaintiff has failed to allege facts sufficient to support her *Monell* claim under any theory. Further, since Plaintiff has already had an opportunity to amend which only resulted in the addition of a host of conclusory statements and three anecdotes, the court concludes that further leave to amend would be futile. Accordingly, Defendants' motions are **GRANTED** in this regard and Claim-3 is **DISMISSED with prejudice** in its entirety.

### *Claim-5 and Claim-6: State Law Claims for Negligence*

Claim-5 is a negligence claim brought pursuant to state law against the City, County, and the Doe Defendants. *See* FAC (dkt. 16) at 22-24. The FAC submits that the City and/or the County are vicariously liable for the wrongful acts of the Doe Defendants, as provided for in Cal. Gov. Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal

representative."). FAC (dkt. 16) at 23. Specifically, the FAC submits that Defendants' actions and omissions were negligent in the following areas: (1) the failure to properly assess and or supervise the need to detain, arrest, and use force against Plaintiff; (2) the negligent tactics and handling of the situation with Plaintiff including pre-shooting negligence; (3) the negligent detention, arrest, and use of force against Plaintiff; (4) the failure to properly train, supervise, and discipline employees including the individual Doe Defendants; (5) the failure to provide timely medical assistance to Plaintiff; and (6) the negligent hiring, retention, and assignment of its employees including the individual Doe Defendants. *Id*.

The court has already noted that Plaintiff's FAC is riddled with conclusory and argumentative content – and the portions related to Claim-5 and Claim-6 are no different. Plaintiff's assertions of negligence (as to the City and County) rely entirely on conclusory statements and are not based on any foundation of factual allegations. The FAC states no facts to support any negligence claim against the City or the County based on a vicarious liability theory – there are no non-conclusory factual allegations regarding either municipality's hiring or retention practices, or their training or disciplinary or supervision practices, or any factual allegations that if true could otherwise combine to support a finding of pre-shooting negligence against either municipal entity, or any factual allegations about the failure to timely provide medical assistance to Plaintiff (indeed, other than a rote mention of this supposed failure to timely provide medical assistance in the body of Claim-5, the FAC contains no such factual allegation at all). In short, as the County puts it: "[n]o facts are alleged showing any pattern or propensity of misconduct by any County deputies to support plaintiff's conclusion that the County 'knew or should have known' of any propensity for 'unlawful violence' or any other conduct that would suggest the hiring, training or supervision of County deputies was lacking or negligent." *See* County Defs.' Mot. (dkt. 20) at 30. To make matters even worse, Plaintiff repeatedly lumps together her conclusory allegations against the City and County together. *See e.g.,* FAC (dkt. 16) at 23 ("Defendants are liable for Plaintiff's injuries because they were integral participants in the negligence, or because they failed to intervene to prevent these violations, or under the doctrine of *respondeat superior*.").

Although these defects are facially manifest in the FAC, Plaintiff's response in opposition

United States District Court
Northern District of California

United States District Court
Northern District of California

further reinforces the conclusion that the FAC's assertions in this regard fail to "raise a right to relief above the speculative level," (*see Bell Atl. Corp.*, 550 U.S. at 555) because Plaintiff's FAC appears to expressly rely on an unreasonable inference that "proper training and policies would instruct that this should never (sic) happened." Pl.'s Opp. (dkt. 26) at 24. Because this court is not required to assume the truth of such conclusory statements, or unwarranted deductions of fact, or unreasonable inferences – and, when stripped of such content, the court finds that no factual allegations in the FAC that could support any sort of negligence claim against the City or the County. Further, Plaintiff has already had one opportunity to amend, thus, the court finds that further leave to amend would be futile in that if Plaintiff had concrete facts to present in this regard, she would have already done so. Accordingly, Defendants' motions are **GRANTED** and Claim-5 is **DISMISSED with prejudice** as to the City and County. However, those portions of Claim-5 accusing negligence as to the individual Doe Defendant(s)' use of force against Plaintiff remain active. Claim-6 is repetitive of those portions of Claim-5 dealing with the City and County in that it once again assigns negligent hiring, supervision, and retention to the City and County. For the reasons stated above, not to mention the fact that Plaintiff's asserted statutory basis for this claim (Cal Gov. Code § 820) does not provide a basis for a negligent hiring and supervision claim, Defendants' motions are **GRANTED** and Claim-6 is **DISMISSED with prejudice** in its entirety.

*Claim-8: Intentional Infliction of Emotional Distress against City, County, and Doe Defendants*

Claim-8 alleges that the actions of the Doe Defendant(s), having been undertaken in the course of their duties, also imply vicarious liability under state law for their municipal employer(s). *See* FAC (dkt. 16) at 26-27. The FAC then alleges that the Doe Defendant(s)' actions "were both intentional and malicious . . . [as well as being] willful, wanton, oppressive, fraudulent, despicable, and beyond that which should be tolerated by a civilized society . . . [and] were carried out with a conscious disregard [for] the likelihood of causing injury, suffering, or distress to Plaintiffs (sic)." *Id.* at 27. For the reasons stated below, the court finds that Plaintiff's attempt to recast her excessive force claim against the Doe Defendants into a state-law claim for intentional infliction of emotional distress is not viable.

In California, a cause of action for intentional infliction of emotional distress exists when

there is: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the effect of which is the suffering of severe or extreme emotional distress by the plaintiff; and (3) the actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 95 Cal. Rptr. 3d 636, 209 P.3d 963 (2009). Regarding the requirement that the plaintiffs show "severe" emotional distress, the California Supreme Court has set a high bar in that "severe" emotional distress refers to emotional distress "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id*. at 1051 (quotations and citations omitted).

Here, the court finds that Plaintiff's allegations of intentional infliction of emotional distress are inadequate in numerous respects. First, and most importantly, Plaintiff's pleadings and arguments amount to "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusions." *Iqbal*, 556 U.S. at 678. Or, put another way, as to the various elements of this claim, Plaintiff relies on mere labels (e.g., by merely repeating that Defendants actions were intentional, malicious, willful, wanton, oppressive, fraudulent, despicable, and that as a result, Plaintiff "suffered and continues to suffer anxiety, worry, emotional distress, embarrassment, fright, shock, discomfort, and mental anguish." FAC (dkt. 16) at 27). However, relying on mere labels, conclusions, and threadbare recitals with no factual development is insufficient to survive dismissal. *See Bell Atl. Corp.*, 550 U.S. at 555 ("a plaintiff's obligation to provide the "grounds" of his [or her] "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Here, the FAC includes a paucity of allegations specific to intentional infliction of emotional distress, and those recitations are rendered in a conclusory fashion as to each of the elements of this claim. Furthermore, Plaintiff's Opposition brief is equally conclusory: namely, that during a public protest that had become unruly, one or more Doe Defendants grabbed her arm, and then shot her (without warning) with projectiles containing a substance similar to pepper

spray, as a result of which she experienced certain well-pleaded *physical* injuries in addition to the rote statement that she suffered "emotional distress." *See* Pl.'s Opp. (dkt. 26) at 24-25. Furthermore, Plaintiff has not included any *factual* allegations that Defendants intended to cause — or recklessly disregarded the possibility of causing — severe or extreme emotional distress, which is a necessary element of her claim. Putting aside Plaintiff's labels and conclusory statements, at most she has alleged that during the Doe Defendants' attempts to restore order, they either mistakenly, or accidentally, or intentionally targeted her in addition to others. This falls woefully short of alleging facts that, if true, would establish extreme and outrageous conduct that was effected with the intention of causing, or at least with a reckless disregard of the probability of causing, severe or extreme emotional distress.

Moreover, even if the Doe Defendant(s) intended to apply their crowd control measures to Plaintiff (rather than by accident or mistake), the actions as pleaded would not rise to the level of "extreme and outrageous conduct." California courts have held that "it is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he [or she] has intended to inflict emotional distress, or even that his [or her] conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *See Cochran v. Cochran*, 65 Cal. App. 4th 488, 496, 76 Cal. Rptr. 2d 540 (1998) (quoting Restatement (Second) of Torts § 46, cmt. d) (affirming dismissal of claim). Then there is the fact that – Plaintiff has not adequately pleaded severe or extreme emotional distress beyond using mere labels (by way of allegations in this regard, the FAC is limited to simply stating that she suffered from: "emotional distress," "emotional pain," "emotional injury," and "anxiety, worry, emotional distress, embarrassment, fright, shock, discomfort, and mental anguish"). As noted above, Plaintiff relies exclusively on these labels without providing factual allegations about any extreme emotional distress she may have suffered. California courts have held that such allegations fail to establish the degree of harm necessary for a claim of intentional infliction of emotional distress. *See e.g.*, *Hughes*, 46 Cal. 4th at 1051 (affirming summary judgment against plaintiff who simply asserted "that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation"). Regarding leave to amend, the court finds that Plaintiff has already had

26

one opportunity to amend which merely resulted in the addition of more labels and conclusory statements. *Compare* Compl. (dkt. 1) at 20-21, *with* FAC (dkt. 16) at 26-27. Accordingly, the court agrees with Defendants that further leave to amend would be futile; thus, for these reasons, Defendants motions are **GRANTED** and Claim-8 is **DISMISSED with prejudice** in its entirety.

### CONCLUSION

As stated herein, both motions to dismiss (dkts. 20, 21) are **GRANTED** and the City, the County, Sheriff Honsal, Chief Watson, and the Doe Defendants are herewith dismissed from this lawsuit to the following extent: the case remains active only as to the Doe Defendants with respect to Claim-1 and Claim-2; Claim-3 is dismissed in its entirely; Claim-4 remains active in its entirety; Claim-5 remains active only as to the Doe Defendants; Claim-6 is dismissed in its entirety; Claim-7 remains active in its entirety; and Claim-8 is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: February 10, 2022

ROBERT M. ILLMAN
United States Magistrate Judge